## KING, ET AL., v. KING.

(No. 863; Decided November 26th, 1917; 168 Pac. 730.)

Letters—Ownership—Right to Inspect and Make Copies—Records—Literary Property—Right to Control Publication of Letters—Administration of Public Justice—Words and Phrases—"Justice."

1. The writer and addressee of letters together have the whole right of property therein and right of possession thereto

as against one obtaining possession of such letters sur-
reptitiously and clandestinely.

2. A deposition and letters transmitted therewith were no part
of the record after the case had been concluded, when there
was no appeal and the time for appeal had expired, and
they were not incorporated in a bill of exceptions, espe-
cially where the court with the parties' consent ordered the
letters and deposition sealed and left in the custody of the
clerk.

3. Compiled Statutes, 1910, Section 1134, providing that all
books and papers required to be in the offices of the sheriff,
county clerk and county treasurer shall be open to exam-
ination of any person, gives no right to inspect and make
copies of the records of the courts.

4. The rule that the owners of letters may enjoin their unau-
thorized publication is subject to the exception that their
production may be compelled for the purposes of public
justice, publicly administered according to the established
institutions of the country; but this exception will not
compel their production before a tribunal of a secret order
not established by the public institutions of the country.

5. Where an application for a temporary injunction was made
at the commencement of the action, no question of service
could have been before the lower court, and the contention
that the injunction could not issue because service could
not be made within the state was not properly before the
appellate court.

6. When it appears from the petition that plaintiff is entitled
to relief consisting in part in restraining acts, the com-
mission of which during the litigation would produce an
irreparable injury to plaintiff, or when it appears that de-
fendant is doing or threatening something in violation of
plaintiff's rights tending to render the judgment ineffectual,
an application for a temporary restraining order should
be granted under the provisions of Compiled Statutes,
1910, Section 4898.

ERROR to District Court, Albany County; HON. V. J.
TIDBALL, Judge.

Suit by Francis S. King, et al., against Margaret E. King
to establish proprietary rights in letters of the plaintiffs,
which had been annexed to depositions used in a prior suit
and thereafter by consent of parties left in the custody of
the clerk under seal and also seeking an injunction restrain-

ing defendant from gaining access to the letters or copies thereof, or from publishing them, or disclosing their contents. A temporary injunction having been denied, the plaintiffs bring error.

*Corthell, McCullough & Corthell,* for plaintiffs in error.

The trial court denied the application of plaintiffs below for a temporary injunction. An order of injunction pending the proceedings in error was thereafter granted by this court and is now in effect. This court has jurisdiction to reverse an order denying a temporary injunction and discretion to restrain the parties in a proper case pending proceedings in eror. (Weaver v. Richardson, 21 Wyo. 343, 353; Collins v. Stanley, 15 Wyo. 282, 295; Stowe v. Powers, 19 Wyo. 291, 307, 308.) The denial of the application for a temporary order by the court below was an abuse of discretion. The author of letters has the exclusive literary property in them, and the recipient, to whom the letters are addressed, has the right of property in the material manuscript. Alexander Pope brought an action against a piratical publisher of some of the letters of his own authorship, which had apparently come into the hands of the publisher in an entirely legitimate way. The defendant contended that a letter is in the nature of a gift to the receiver. It was held that the receiver has only a joint property with the writer. (Pope v. Curl, 2 Atk. 342; 26 Eng. Reprint, 608.) The same rule is announced in Thompson v. Stanhope, 2 Amb. 737. Queen Victoria and the Prince Consort, for their own private entertainment and that of their intimate friends, had made certain sketches, which were entrusted to the custody of a third person for certain special purposes. Some of these sketches surreptitiously came into the hands of a London publisher, who attempted to prepare and publish a catalogue containing a description of these works. It was held that the right and property of an author or composer in work unpublished and kept for his private use entitles him to withhold the same altogether from the knowledge of others and the courts will prevent an intervention of the right.

(Prince Albert v. Strange, 1 McM. & G. 25, 41 Eng. Reprint, 1171, 1172.) The doctrine has been upheld in this country. (Folsom v. Marsh, 2 Story, 100, a case involving the letters and writings of George Washington. See also Grigsby v. Breckenridge, 2 Bush. (Ky.) 480.) The rule was also announced in a case involving the letters and rights of Mary Baker Eddy, founder of the Scientist Church. (Baker v. Libbie, 210 Mass. 599, 97 N. E. 109-112.) A denial of injunctive relief would be equivalent to denying the relief altogther. (25 Cyc. 1493; 2 Torts, &c., Blackstone Inst. 363, 364; Dock v. Dock, 180 Pa. St. 14; 36 A. 411.) The letters in controversy have served every legitimate purpose which could be claimed for their use as evidence in the divorce proceedings, the decision of the District Court denying the temporary restraining order should be reversed.

*Cassius M. Eby,* for defendant in error.

It appears from the petition that the letters are in *custodia legis* and not in the custody or under the control of this defendant. The letters are sought for use in a hearing before the Eastern Star Lodge upon certain charges filed therein by defendant, which tribunal has a right to know whether the charges are true or false. An injunction will be denied, where the sole purpose of the proceeding is to enable the owner to obtain possession of evidence for the purpose of destroying it and defeating the ends of justice. Justice is not confined to what are termed legally constituted courts, so that the general rule denying injunctive relief, where such evidence was required for the administration of justice, should be applied. The general rule was stated in Barrett v. Fish, 82 Am. St. Rep. 914, and in Grigsby v. Breckenridge, 2 Bush. 480. While alleging proprietary rights, it is clear that the real object sought by the plaintiffs is to destroy evidence. The exception to the general rule, that letters in the hands of the third persons must be produced when required for the purpose of the administration of justice, should be applied. (Hopkinson

v. Burghley, L. R. 2 Ch. (Eng.) 447; Gee v. Prichard, 2 Swanst. (Eng.) 402; Flosom v. Marsh, 2 Story, 100, 9 Fed 'Cas. 4, 901; Robert v. McKee, 29 Ga. 161.)  Another exception is, when their publication is necessary to vindicate the character of the person to whom they are addressed. (Litton v. Devey, 54 L. J. Ch. (Eng.) 293; Widdemer v. Hubbard, 19 Phil. (Pa.) 263; Labouchere v. Hess, 77 L. T. N. S. (Eng.) 559; Percival v. Phipps, 2 Ves. & B. (Eng.) 19.)  It is shown by the petition that another action is pending wherein plaintiff, F. S. King, is one of the defendants, involving an application to procure copies of the letters and deposition in question and in which said defendant could· have applied for full and adequate relief by cross-petition.  Courts cannot restrain proceedings in another case.  The ground for injunction is a defense to the action.  (Dederick v. Haysradt, 4 Pr. 350; 2 Nash P. & P. 886; 34 Cyc. 593.)  The limitations upon the common law made by the English courts have been quite generally abolished in this country by statute, and all who desire may examine all records and papers regardless of whether they have any definite interest in the subject matter or not.  (24 Ency. L. 183.)  County records are public records.  (Sec. 930, Comp. Stats. 1910.)  A deposition filed in evidence is a public document.  (34 Cyc. 595; Schmedding v. May, 24 Am. St. Rep. 77.)  Defendant has a right to discuss the details of her divorce suit, including the contents of letters in evidence.  It is a constitutional right.  (Art. 1, Sec. 20, Wyo. Const.)  No personal service was made in this case and as equity acts *in personam,* the court is without jurisdiction.  (3 Pomeroy's Equity Jurisprudence, Sec. 1360; Williams v. Welton, 28 O. S. 451; Lutz v. Kelley, 47 Ia. 307; Pennoyer v. Neff, 95 U. S. 714.)  A personal judgment such as is sought in this action cannot be rendered against a defendant served outside the state.  (Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Cooper v. Reynolds, 10 Wallace, 308, 19 L. Ed. 931; Grover v. Radcliff, 137 U. S. 287.)

BLYDENBURGH, JUSTICE.

This is a proceeding in error for the review of an order denying a motion for an order of injunction pending the action. It appears from the petition that certain personal and private letters written by the plaintiff, Mary E. King, were sent through the ordinary mails to and received by the plaintiff, Francis S. King, and the possession of which was surreptitiously and clandestinely obtained by the defendant, Margaret E. King; that in May, 1914, the defendant caused a deposition to be taken in which she testified concerning the contents of the letters and caused some of said letters to be transmitted to the clerk of the District Court of Albany County with said deposition, said deposition and letters to be used in an action for divorce then pending in said court brought by Margaret E. King, the defendant here, against Francis S. King, one of the plaintiffs here; that the divorce suit was terminated by final judgment June 5, 1914, and no proceedings to reverse, vacate or modify said judgment were ever instituted, neither party to the said action being now entitled to take such proceedings. After the rendition of the judgment, by consent of parties to said action, and by an order of court the said deposition and letters were sealed up and placed in the custody of the clerk of the court and still remain under seal in the custody of said clerk; that on August 14, 1915, Margaret E. King, the defendant, by her attorney, made application to the court in the terminated divorce action for an order unsealing and furnishing copies of the letters and deposition for the purpose of publishing and making known the contents thereof in the Eastern Star Lodge in proceedings in said lodge upon charges preferred by Margaret E. King against the plaintiff, Mary E. King, which application was denied by the court; that thereafter, on or about November 13, 1915, said Eastern Star Lodge made an application to the court to have said deposition and letters unsealed and the delivery thereof, or of certified copies, to Margaret E. King, for use in said lodge, which application was still pending and undisposed of at the commencement of this action;

that the defendant, Margaret E. King, intends and threatens to disclose the contents of the said letters and deposition, and to publish the same to the members of the said lodge and others with the intent and purpose, wilfully and maliciously to injure, defame and humiliate the plaintiffs; that the plaintiffs still retain and have at all times retained all of their proprietary rights in the said letters and the contents thereof, and the abstraction thereof from the possession and custody of the plaintiffs was without their knowledge or consent and against their will, and if the defendant is permitted to unseal the documents and make publication thereof it will be an invasion of the rights of plaintiffs. The prayer of the petition is for the delivery of the letters to the plaintiffs and the destruction of the deposition other than the original letters, a perpetual injunction against the defendant, Margaret E. King, from gaining access to the letters or copies thereof, and from disclosing the contents or making publication thereof, and for a temporary injunction during the pendency of the action.

The application for the temporary restraining order was made at the commencement of the action, the petition being sworn to and filed, the motion for a temporary injunction order being filed and presented to the court, and the order of the court denying the motion being all on the same day, viz., December 24, 1915.

The statute of this state regarding the right to temporary injunctions is found in Section 4898, Comp. Stat. 1910, which is as follows:

"When it appears by the petition that the plaintiff is entitled to the relief demanded, and such relief, or any part thereof, consists in restraining the commission or continuance of some act, the commission or continuance of which, during the litigation, would produce great or irreparable injury to the plaintiff, or when, during the litigation, it appears that the defendant is doing, or threatens or is about to do, or is procuring or suffering to be done, some act in violation of the plaintiff's rights, respecting the subject of the action, and tending to render the judgment ineffectual,

a temporary order may be granted restraining such act; and such order may also be granted in any case where it is specially authorized by statute."

The application for the temporary injunction having been made upon the petition sworn to positively, and no answer or counter-affidavits having been filed or presented to the court, the petition for the purpose of the motion is to be taken as true, and the question to be decided is, do the facts stated in the petition bring it within the provisions of the statute quoted, so as to entitle the plaintiffs to a temporary restraining order?

1. The question as to the property rights in letters and other literary productions has been before the courts, both in England and America, in numerous cases in connection with the question of the right to restrain their publication by injunction. Judge Story, in a very able opinion in the case of Folson, et al., v. Marsh, et al., 9 Fed. Cas., Case No. 4, 901, said:

"In the first place, I hold, that the author of any letter or letters (and his representatives), whether they are literary compositions, or familiar letters, or letters of business, possess the sole and exclusive copyright therein; and that no persons, neither those to whom they are addressed nor other persons, have any right or authority to publish the same upon their own account, or for their own benefit. * * * If he attempt to publish such letter or letters on other occasions, not justifiable, a court of equity will prevent the publication by an injunction. * * * * In short, the person to whom letters are addressed has but a limited right, or special property (if I may so call it) in such letters, as a trustee, or bailee, for particular purposes, either of information or of protection, or of support of his own rights and character."

In Grigsby and Wife v. Breckinridge, 2 Bush. (Ky.) 480, 92 Am. Dec. 509, the court said: "There is property in even such letters. By sending them, the authors parted with their right to the possession, control, or reclamation of them without her consent, and gave her the exclusive right

to read and keep them for their enduring memories and sentiments. This was her property, which might have been peculiarly valuable if estimated by only *affectionis pretium*, often exceeding the cash value. The authors also retained a qualified property in their contents which they alone had the right to publish for their own benefit; and therefore, and also because they reflected their emotions and sentiments, they had the right to enjoin publication by the recipient or any other person. This was the author's property to its full extent. These correlative rights of property are now established by abundant authority, fortified by principle and analogy."

In Baker v. Libbie, 210 Mass. 599, 97 N. E. 109, 37 L. R. A. N. S. 944, Ann. Cas. 1912D. 551, decided in 1912, a case in which the question of the publication of private letters of Mrs. Eddy, the founder of Christian Science, was considered, the court, after examining many authorities, and quoting from a number, says (210 Mass. 604, 97 N. E. 111, 37 L. R. A. N. S. 944, Ann. Cases 1912D. 551) : "This review of cases demonstrates that the weight of decisions by courts of great authority, speaking often through judges of high distinction for learning and ability, supports the conclusion that equity will afford injunctive relief to the author against the publication of his private letters upon commonplace subjects without regard to their literary merit or the popular attention or special curiosity aroused by them." We may well adopt this language as our opinion on this proposition. In the note to the above case in 25 Am. & Eng. Ann. Cases, on page 555, the general rule, followed by numerous citations, is thus stated: "The rule is well settled in accord with the holding of the reported case, that the publication of private letters, whether on private matters of business, literary topics or family affairs, if attempted without the authority of the writer, may be enjoined."

Many of the adjudicated cases have been between the author and receiver of letters and have involved the right of the possession and of publication as between them, and the holding generally has been, as shown by the above quo-

tations, that there is a special property in the receiver, and he has the right of possession and property in the paper and parchment, but the property in the contents for the purpose of publication, etc., is in the author. Thus, there is a joint right of property in the receiver with the writer. (Pope v. Curl, 2 Atk. 342, 26 Eng. Reprint, 608.) In the case at bar, however, both the writer and receiver of the letters are plaintiffs, hence the whole right of property and the right of possession are joined in them.

2. The chief claim, apparently, of defendant in error is that these letters being in the custody of the clerk by order of court are in *custodia legis* and part of the public records to which all persons should have access at all proper times, and therefore cannot be enjoined from getting copies. The common law rule is that no person is entitled to inspect public records or make copies unless he has such an interest therein as would enable him to defend or maintain an action for which the record sought can be furnished as evidence or necessary information. (34 Cyc. 592, 593.) Some states have by statute provided that all public records shall be open to inspection and copies. Our statute (Sec. 1134, Comp. Stat. 1910) does not give this right as to court records. It has been held under like statutes (Cowley v. Pulsifer, 137 Mass. 392, 50 Am. Rep. 318) as follows: "but the county records or files, which are there ordered to be opened for public inspection and examination and of which any person may take copies, are the records and files of the county, not of the courts of the commonwealth within and for that county."

But in any event the deposition and letters in a case that has been concluded and in which there is no appeal and the time for appeal has expired, and which are not incorporated in any bill of exceptions, are not part of the records. (17 Cyc. 304, Note 75; 11 Cyc. 763, Note; Baltimore R. R. Co. v. Presbyterian Church, 91 U. S. 127, 23 L. Ed. 260.) It is evident that both the court and the parties when the order was made that these letters and deposition should be sealed and left in the custody of the clerk, were of the

opinion that they were not public records that were open to public inspection; otherwise, why should the order and consent be that they be *sealed?*  It may well be doubted if the court could have made the order without the consent of parties.  The letters being property after they had served their purpose as evidence stood in the same position as other personal property which might be used in evidence, such as a watch which has been the subject of larceny, which should be returned to the owner.  It might be imagined that there was some dispute between the parties as to who had the right to custody of the letters in question, and until that matter could be determined, they were by agreement sealed up and left in the custody of the clerk as a depository.

Counsel for defendant in error urges that these letters are requested, or copies of them are required, to be used as evidence by the tribunals of the Eastern Star Lodge, and therefore come under the exception to the effect that letters of this character, although private property, can be used, and can be compelled to be brought into court for evidence, and quotes from the case of Barrett v. Fish, 72 Vt. 18, 47 Atl. 174, 51 L. R. A. 754, 82 Am. St. Rep. 914. The quotation ends with the statement that "the case falls clearly within the exception stated."  If we turn to this case we find that the court first states the rule and then states the exception as follows:  "One of the exceptions to this rule is that, 'for the purposes of public justice publicly administered, according to the established institutions of the country,' private letters in the hands of a party other than the writer must always be produced, unless such letters would tend to criminate the person required by law to produce them."

By no conception can it be claimed that the tribunals or rules adopted within the precincts of a secret organization could be considered "for the purposes of public justice publicly administered, according to the established institutions of the country."  In using the word "justice" in that case and in the other cases cited by counsel for defendant in

error the courts have always had in view "the courts established by the public institutions of the country."

3. Defendant in error also claims that a temporary restraining order cannot issue because service of the same could not be made within the state. As this application was made at the commencement of the action, no question of service could have been before the lower court, and certainly none is here.

Our conclusion is that the petition presented a proper case for an injunction, and the defendant appears therefrom to threaten the publication of the contents of the matters which are the subject of the action in violation of the rights of the plaintiffs, and such publication would tend to render the judgment sought ineffectual, that prejudicial error was committed by the denial of plaintiffs' motion for a temporary restraining order. The order of the lower court will be reversed and the District Court directed, if there has been no final disposition of the case, to enter the proper order restraining the defendant from gaining access to the letters or copies thereof mentioned in the petition, and from in any manner disclosing the contents of said letters and deposition, or making publication thereof during the pendency of the action, upon the plaintiffs giving the bond prescribed by statute in an amount to be fixed by said court.

*Reversed.*

Potter, C. J., and Beard, J., concur.