## COWAN et al v. SALT LAKE HARDWARE CO.

No. 7463.   Decided August 14, 1950.   (221 P. 2d  625.)

See 18 C. J., Corporations, Sec. 278. Amendment to articles of incorporation as within statutory provisions, 108 A. L. R. 52. See, also, 13 Am. Jur. 229.

*Franklin Riter, Ashby D. Boyle,* Salt Lake City, for appellant.

*Frank A. Johnson, Dey, Hoppaugh, Mark & Johnson,* Salt Lake City, for respondent.

WADE, Justice.

This action was brought by all but one of the owners of second preferred shares of stock in the Salt Lake Hardware Co., respondent herein, to determine the right of that corporation to amend its Articles of Incorporation so as to be able to recall and redeem those shares should the Board of Directors of that company desire to do so. It was the plaintiffs' and appellants' theory that the company could not so amend its Articles of Incorporation, whereas the respondent herein, by its answer, contended that it had this right. At

the trial both the plaintiffs and defendant moved for a judgment on the pleadings. The plaintiffs' motion was denied and the defendant's was granted. From this judgment the plaintiffs appeal.

The Salt Lake Hardware Company was incorporated in the State of Utah in April, 1898 for a period of 50 years. At that time the capital of the company was fixed at $200,-000, divided into 750 shares of 10% non-callable preferred stock at the par value of $100 each, and 1,250 shares of common stock at the par value of $100 each. The original Articles of Incorporation provided that upon dissolution of the corporation, after payment of all debts, the preferred stock should be paid in full first, before the balance of the assets was divided among the holders of the common stock pro rata. The Articles of Incorporation did not contain an express provision authorizing the stockholders to amend these Articles. However, from time to time during the existence of the company, it has amended its Articles to increase the amount of capital of the company, and also made an amendment changing the class of preferred stock by adding a class 2 of 6% non-callable preferred stock. At all times during the existence of the respondent, it was and is, in sound financial condition and has prospered during the years so that now its assets are worth millions of dollars. The amendment making the non-callable preferred shares callable was passed because respondent believed it could obtain funds for financing its operations at a lesser rate of interest than 6% per annum. This amendment was made on November 10, 1947, with more than two-thirds of its outstanding stock voting in its favor.

It is appellants' contention that the adoption of the amendment to respondent's Articles of Incorporation whereby its non-callable preferred shares of stock were made redeemable is unauthorized by law because its original Articles of Incorporation did not contain authority to amend its Articles, and that the constitutional and statu-

tory provisions allowing amendments are merely reservations of power protecting the relationship between the state and the corporations and to be exercised only in matters of public concern and welfare. At the time respondent was incorporated, there was and still is in effect, art. XII, Sec. 1 of the Constitution of the State of Utah, which reads as follows:

"Corporations may be formed under general laws, but shall not be created by special acts. All laws relating to corporations may be altered, amended or repealed by the Legislature, and all corporations doing business in this State, may, as to such business, be regulated, limited or restrained by law."

There was also at that time in effect Sec. 338, R. S. U. 1898, which reads as folows: "The articles of incorporation of any corporation now existing or that hereafter may be organized under the laws of this state may be amended in any respect conformable to the provisions of this chapter by a vote representing at least two-thirds of the outstanding capital stock thereof at a stockholders' meeting called for that purpose, as hereinafter prescribed; *provided,* that the original purpose of the corporation shall not be altered, nor shall the capital stock be diminished to an amount less than fifty per cent in excess of the indebtedness of the corporation; *and provided further,* that the liability of the holder of full-paid capital stock for assessments or for the indebtedness of the corporation shall not be changed without the consent of all the stockholders."

Section 338, supra, has been amended from time to time in particulars not relevant to the questions involved in the instant case and is now Sec. 18—2—44, U. C. A. 1943.

Counsel for appellants in their brief have provided this court with an interesting and learned treatise on the historical background of the reasons for the adoption by states of constitutional and statutory provisions similar to ours quoted above in order to avoid the effect of the ruling of the United States Supreme Court in the

case of Trustees of *Dartmouth College* v. *Woodward,* 4 Wheat. 518, 4 L. Ed. 629, wherein it was held that the charter granted by a state to a corporation was in the nature of a contract between the state and the corporation, and that the state could not impair its obligations thereunder by subsequent legislation. However interesting this historical back ground is, it is now well settled that such constitutional and statutory provisions authorizing amendments of Articles of Incorporation do not only pertain as to the relationship between the state and the corporation, but pertain to the rights between the corporation and its stockholders. When the respondent was incorporated, the constitutional provision of this state with reference to allowing the legislature to amend laws relating to corporations became as much a part of its Articles of Incorporation as though they were specifically referred to and made a part of such articles. See *Keetch* v. *Cordner,* 90 Utah 423, at page 428, 62 P. 2d 273, at page 275, 108 A. L. R. 52, wherein this court said: " * * * The law which was in existence at the time the articles of agreement were entered into became a part thereof. In legal effect, the signers of the original articles of incorporation agreed that they may thereafter be amended in conformity with law. * * *"

See also *Salt Lake Automobile Co.* v. *Keith O'Brien Co.,* 45 Utah 218, 143 P. 1015; *Weede* v. *Emma Copper Co.,* 58 Utah 524, 200 P. 517, and *Fower* v. *Provo Bench Canal & Irrigation Co.,* 99 Utah 267, 101 P. 2d 375.

Appellants concede that the original Articles of Incorporation could have provided for amendments but argue that since they did not contain any such provision, any amendment not assented to by all the stockholders was unauthorized. Since Sec. 338, R. S. U. 1898, which was in effect when respondent became incorporated, specifically authorizes amendments by two-thirds of the outstanding capital stock in any respect which would conform to the provisions

of the law on corporations, the respondent has the right to amend its Articles, if done in conformity with such statute as much as it would had the original Articles specifically provided that amendments might be made. When the stockholders bought shares in the corporation, the laws of the state controlled the rights between the stockholders and the corporation just the same as if those laws had been copied in the Articles and their rights were subject to those laws.

Appellants further argue that if this court should find that Sec. 388 gave the corporation the right to amend its Articles in any respect, that nevertheless such right is not unlimited and the courts when called upon to do so, should interpret and place a construction on this right of amendment which would protect the rights of minority stockholders against abuse of authority by the majority. They argue that since the corporation has always been in sound financial condition, that the preferred stock as a practical matter has a much higher value than par plus interest, and that by making the non-callable stock callable, this value which is a vested property interest is destroyed and becomes a much less desirable investment. That under the circumstances disclosed in this case, it is highly inequitable to allow such an amendment, because its only purpose was to benefit the holders of common stock at the expense of the holders of preferred stock and not to alleviate some emergency condition for the benefit of all the stockholders and the corporation, and this court in determining whether the corporation has acted within the limits of its reserved power to amend should apply the test of whether the amendment is fair, equitable and just to all concerned.

Even if this court were to agree with appellants' argument, yet the facts of this case would not warrant a finding that the act of the majority of the stockholders in

amending its Articles to make the non-callable stock callable, was inequitable. It will be recalled that the respondent was organized in April, 1898 for a period of 50 years. The amendment was made in November, 1947, just five months before the charter of the corporation would have expired. Upon dissolution of the corporation, the preferred stock was entitled to be paid its par value, which is $100 per share, plus a dividend of 6% per annum payable from the net profits of the corporation, before the holders of the common stock be paid anything that might be due them from the balance remaining. It is readily apparent therefore, that at the time the amendment was made, the most that the holders of the preferred stock could look forward to under the original Articles was the 6% dividend for five more months, plus, of course, the par value of their stock, and no more. The holders of the preferred shares upon dissolution of the corporation were not entitled to share in any remaining assets after payment of the corporation's obligations to them, and the corporation was under no obligation to continue its existence for their benefit. It could have allowed its charter to expire, paid the preferred shares off and then reorganized. It needs no great knowledge of affairs of finance to make it apparent that the equitable value of preferred shares in a corporation whose life expectancy could be no more than five months would be as adversely affected by that fact as they would be by becoming callable at the will of the Board of Directors of the corporation. The fact that the corporation decided later to amend its Articles to extend the life of its charter, does not altar the equity of the situation. In effect, when the corporation amended its Articles to extend its life, it was the same as if it had obtained a new charter. See *Fower v. Provo Bench Canal & Irigation Co.*, supra, and of course, if it had actually obtained a new charter it could not be argued that its Articles could not provide for call-

able preferred shares, if such were the desires of the incorporators.

Affirmed. Costs to respondents.

PRATT, C. J., and LATIMER and McDONOUGH, JJ., concur.

WOLFE, J., concurs in the result.