THE STATE OF NEVADA, ON THE RELATION OF LEOLA H. ARMSTRONG, PETITIONER, *v.* THE STATE BOARD OF EXAMINERS, AND THE STATE CONTROLLER, RESPONDENTS.

No. 4570

December 3, 1962

376 P.2d 492

*Samuel B. Francovich*, of Reno, for Petitioner.

*Charles E. Springer*, Attorney General, for Respondents.

# OPINION

*Per Curiam:*

This is an original proceeding in mandamus. The record before us discloses that Leola Armstrong, the relator and petitioner, is an unclassified employee of the Legislative Counsel Bureau. The salary for her employment is not fixed by statute; rather, it is a budgeted item. For the fiscal year 1962–63, the Legislative Counsel Bureau submitted its budget which included, inter alia, a request for $7,764 as salary for relator's position with the Legislative Counsel Bureau. That sum, together with other amounts, was appropriated to the Legislative Counsel Bureau by the 1961 legislature. The petitioner was regularly paid for her services through July 1962. Thereafter, payments ceased as the result of an opinion by the Attorney General, rendered with reference to the services of another unclassified employee of the Legislative Counsel Bureau, that *all* employees of such Bureau be in the classified service under the state merit and personnel system (except the deputy legislative auditor, a position not involved in this case). The Director of the Budget, the State Board of Examiners, and the State Controller complied with the opinion given by the Attorney General. The relator's salary was deleted from the payroll for the pay period August 1 to August 15, 1962,

and her claim therefor rejected by the State Controller. It remains unpaid.

We must decide two questions. First, is the remedy of mandamus available in view of the provisions of NRS 41.010 permitting a civil action to be filed for a claim against the state for which an appropriation has been made, but where the amount is not fixed by law? Second, if such remedy is appropriate, do the provisions of NRS 284.140 (3) of the personnel act authorize the Legislative Counsel, as executive head of the Legislative Counsel Bureau, to employ relator in the unclassified service of the state?[1] We answer each question in the affirmative.

1. Mandamus is proper. The writ of mandamus is available to compel the performance of an act which the law especially enjoins as a duty resulting from an office, and shall be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. NRS 34.160 and 34.170.

Respondents contend that mandamus is not available here because NRS 41.010[2] provides a plain, speedy and adequate remedy to relator. Indeed, they argue that NRS 41.010 precisely fits this case because it is a claim against the state; an appropriation was made for it; and her salary is not fixed by law. These facts cannot be denied. However, the mere fact that other relief may be

---

[1]Respondents also urge laches in defense. We deem such contention to be without any merit, for this proceeding was commenced within three months of the rejection of her claim.

[2]NRS 41.010 provides: "*Actions for services or advances authorized by law.* An officer or person who has presented a claim against the state for services or advances authorized by law, and for which an appropriation has been made, but of which the amount has not been fixed by law, to the board of examiners, which claim the board or the state controller has refused to audit and allow, in whole or in part, may commence an action in any court in Ormsby County having jurisdiction of the amount for the recovery of such portion of the claim as shall have been rejected. In such action the State of Nevada shall be named as defendant, and the summons shall be served upon the state controller, and the action shall proceed as other civil actions to final judgment."

available does not necessarily supersede the remedy of mandamus. Mulford v. Davey, 64 Nev. 506, 186 P.2d 360, 175 A.L.R. 1255; State ex rel. Sears v. Wright, 10 Nev. 167. The core of the problem in each case must be ascertained. If the instant case involved a dispute as to the amount of relator's claim or salary, or whether she had in fact performed services, or other related matters, then the discretion vested by statute in the State Controller, NRS 227.160, and the State Board of Examiners, NRS 353.090, would, in most instances, preclude the remedy of mandamus and force the state employee to resort to the civil action contemplated by NRS 41.010. The case before us is not such a case. The matters concerning which the Board of Examiners and the State Controller may exercise discretion are not here involved. The amount of relator's salary has never been and is not disputed. There is no controversy over any aspect of her employment except its legality. The sole reason for rejecting her claim was the advice of the Attorney General regarding another employee of the Bureau, that employment in the unclassified service of the state by the Legislative Counsel Bureau is unlawful. But for such advice she would have received her regular pay check as in the past. The core of this case as to remedy is thus revealed. The exercise of discretion by either the Board of Examiners or the State Controller is not involved. If advised that her employment in the unclassified service of the state is lawful, payment of her salary would follow as a duty resulting from office and especially enjoined by law. The provisions of NRS 227.160 regarding the State Controller, and NRS 353.090 regarding the State Board of Examiners do not purport to invest such officers with discretion to determine the legality of the employment of state personnel. That determination is one of law, and properly before this court through the remedy of mandamus. See State ex rel. Keith v. Westerfield, 23 Nev. 468, 49 P. 119; State ex rel. Davis v. Eggers, 29 Nev. 469, 91 P. 819, 16 L.R.A. (N.S.) 630.

Indeed, had Mrs. Armstrong filed a civil action under NRS 41.010 it is possible that the central question, the lawfulness of her employment, would not have been.

determined. For example, a quantum meruit recovery for services performed may have been permitted, without a determination of the legality of her employment. In such supposed circumstance, the *inadequacy* of the remedy therein provided is apparent.

A further example of the inadequacy of the remedy provided by NRS 41.010 is the issue, clearly raised, in addition to her past and present status, as to her liability to refund to the state the salary that she has allegedly unlawfully received. The Attorney General's opinion (directed to the status of the other employee mentioned, but applicable as well to petitioner) closes with this sentence: "When it has been determined by your office just what position is purported to be held by Mr. DeWhitt, this office should be advised so that necessary steps can be taken for the recovery of any illegally paid State funds."

We must, however, briefly mention two Nevada cases relied upon by the respondents: State ex rel. Abel v. Eggers, 36 Nev. 372, 136 P. 100 and County of Washoe v. City of Reno, 77 Nev. 152, 360 P.2d 602. In each case mandamus was denied because of the existence of a plain, speedy and adequate remedy at law. The basic issues there involved would, of necessity, be determined in the authorized statutory civil action had it been pursued. However, in the case at bar, we have heretofore indicated how and in what respects the civil action provided for by NRS 41.010 would not necessarily decide the basic issue presented, i.e., the legality of relator's employment in the unclassified service. Thus, in the Abel and Washoe County cases the civil action was in fact an adequate remedy, whereas here, it patently is not.

2. The Legislative Counsel may employ relator in the unclassified service. NRS 218.700 (2) provides: "The legislative counsel shall appoint such professional, technical, clerical and operational staff as the execution of his duties and the operation of the legislative counsel bureau may require, the appointments to be made in accordance with the provisions of the state merit and personnel system." One of the provisions of the state

merit and personnel system is NRS 284.140 providing that "The unclassified service of the State of Nevada shall be comprised of positions held by state officers or employees as follows:

"1. * * *.

"2. * * *.

"3. At the discretion of the elective officer or head of each department, agency or institution, one deputy and one chief assistant in such department, agency or institution."

Though respondents assert otherwise, we deem the Legislative Counsel to be the head of an "agency" as that term is used in NRS 284.140 (3). See State Licensing Bd. of Contractors v. State Civil Service Comm., La.App., 110 So.2d 847, aff'd, 240 La. 331, 123 So.2d 76. Indeed, NRS 218.700 (1) declares him to be the "executive head of the legislative counsel bureau," and "shall direct and supervise all its administrative and technical activities." The Legislative Counsel Bureau consists of a legislative commission, a legislative counsel, a legislative auditor, and such other employees provided for by law. NRS 218.620. Furthermore, we believe that the provisions of NRS 284.139, defining "agency" to mean "every board and commission the members of which, or some of such members, are required by law to be appointed" are especially pertinent to the Legislative Counsel Bureau. Its members are required by law to be appointed. Accordingly, we hold that the Legislative Counsel, as executive head of the Legislative Counsel Bureau, in accordance with NRS 284.140 (3), may appoint one deputy and one chief assistant in the unclassified service of the State of Nevada. As the relator is either a deputy or chief assistant, her appointment was authorized.[3]

It is ordered that a peremptory writ of mandate issue commanding the State Controller to draw his warrant upon the State Treasury in favor of relator for the salary claimed.

---

[3]Though there is some confusion regarding relator's title as an unclassified employee of the Bureau, that matter is of no consequence. The Legislative Counsel may designate her to be either his deputy or his chief assistant.